Exhibit "A"

DANIEL K. KRAMER, BAR ID #262196
dkramer@kramerlaw.com
TERESA A. JOHNSON, BAR ID #307565
tjohnson@kramerlaw.com
WILLIAM N. MATTHEWS, BAR ID #353288
wmatthews@kramerlaw.com
KRAMER TRIAL LAWYERS A.P.C.
10866 Wilshire Boulevard, Ste. 1270
Los Angeles, California 90024
Telephone: (310) 551-0600
Facsimile: (310) 551-0601

Attorneys for Plaintiffs,
BRYAN G. DODS, and SARAH DODS

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/25/2025 4:19 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By W. Noble, Deputy Clerk

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## IN THE COUNTY OF LOS ANGELES

| | |
|---|---|
| BRYAN G. DODS, an individual; and SARAH DODS, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>KIDO SPORTS CO., LTD, a foreign corporation; WESTERN POWER SPORTS, LLC, a corporation; WESTERN POWER SPORTS, INC, a corporation; AMAZON.COM SERVICES LLC, a Limited Liability Company;<br>and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 25NWCV02710<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Strict Products Liability**<br>2. **Failure to Warn**<br>3. **Negligent Products Liability**<br>4. **Breach of Express Warranties**<br>5. **Breach of Implied Warranties**<br>6. **Negligence**<br>7. **Loss of Consortium**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiffs BRYAN G. DODS, an individual, and SARAH DODS, an individual, for causes of action against Defendants, KIDO SPORTS CO., LTD, a foreign corporation, and DOES 1 through 50, inclusive (hereinafter "Defendants"), and allege as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Article VI, Section 10 of the California Constitution, which grants the Superior Court original jurisdiction in all causes except those

given by statute to other courts. The statutes under which this action is brought do not specify any other basis for jurisdiction.

1. This Court has personal jurisdiction over Defendant KIDO SPORTS CO., LTD because, upon information and belief, it has sufficient minimum contacts with California and has purposefully availed itself of the privileges of conducting business in California, including within the County of Los Angeles, such that the exercise of jurisdiction over it comports with traditional notions of fair play and substantial justice.

2. Venue is proper in the Superior Court for the County of Los Angeles pursuant to *Code of Civil Procedure* §§ 395(a) and 395.5 because Defendant KIDO SPORTS CO., LTD is a corporation with its principal place of business in the County of Los Angeles, State of California. Plaintiff alleges that Defendant placed the subject helmet into the stream of commerce knowing and intending it to be used in California.

## **THE PARTIES**

3. Plaintiff BRYAN G. DODS (Hereinafter "Plaintiff BRYAN") is, and at all relevant times mentioned herein was, an individual. At the time of the incident described herein, Plaintiff was lawfully operating his motorcycle and suffered catastrophic injuries due in part to the failure of a protective helmet designed, manufactured, and/or distributed by Defendant KIDO SPORTS CO., LTD.

4. Plaintiff SARAH DODS (hereinafter "Plaintiff SARAH", collectively "Plaintiffs") is, and at all relevant times mentioned herein was, the lawful spouse of Plaintiff Bryan G. Dods. She brings this action for loss of consortium arising from the injuries sustained by her husband in the subject incident.

5. At all times mentioned herein, Defendant KIDO SPORTS CO., LTD (hereinafter "Defendant KIDO") is a foreign corporation organized and existing under the laws of the Republic of Korea, with its principal place of business located at 12145 Mora Drive, Unit 13, Santa Fe Springs, California 90670. Defendant KIDO is authorized to conduct business in the State of California and has been registered with the California Secretary of State as a foreign stock corporation (Entity No. C4121020) since on or about March 5, 2018. Plaintiffs are informed and believe, and on that basis allege, that Defendant KIDO designed, manufactured, imported, marketed, distributed, and/or sold motorcycle helmets, including the Scorpion EXO GT920 helmet (hereinafter the "SUBJECT HELMET"), at issue in this action, throughout

-2-

California, including within the County of Los Angeles.

6.  At all times mentioned herein, Defendant WESTERN POWER SPORTS, LLC (hereinafter "Defendant WESTERN LLC") is an Idaho Limited Liability Company doing substantial business within Los Angeles County, State of California. WESTERN POWER SPORTS, LLC is authorized to conduct business in the State of California and has been registered with the California Secretary of State as a Out of State Limited Liability Company (Entity No. 202461210422) since on or about February 28, 2024. Plaintiffs are informed and believe, and on that basis allege, that WESTERN POWER SPORTS LLC designed, manufactured, imported, marketed, distributed, and/or sold motorcycle helmets, including the SUBJECT HELMET, at issue in this action, throughout California, including within the County of Los Angeles.

7.  At all times mentioned herein, Defendant WESTERN POWER SPORTS, INC. (hereinafter "Defendant WESTERN INC.") is an Idaho corporation doing substantial business within Los Angeles County, State of California. WESTERN POWER SPORTS, INC. is authorized to conduct business in the State of California and has been registered with the California Secretary of State as a Out of State Corporation (Entity No. 1629078) since on or about December 7, 1988. Plaintiffs are informed and believe, and on that basis allege, that WESTERN POWER SPORTS INC. designed, manufactured, imported, marketed, distributed, and/or sold motorcycle helmets, including the SUBJECT HELMET, at issue in this action, throughout California, including within the County of Los Angeles.

8.  At all times mentioned herein, Defendant AMAZON.COM SERVICES LLC (hereinafter "Defendant AMAZON"; collectively all "Defendants") is a Delaware Limited Liability Company doing substantial business in Los Angeles County, State of California. Plaintiffs are informed and believe, and on that basis allege, that AMAZON.COM marketed, distributed, and/or sold motorcycle helmets, including the SUBJECT HELMET, at issue in this action, throughout California, including within the County of Los Angeles.

9.  The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants are ascertained, Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities. Plaintiff is informed and believe, and thereon allege, that each Defendant designated herein as

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

a DOE is responsible in some manner for each other Defendant's acts and omissions and for the resulting injuries and damages to Plaintiff, as alleged herein.

## GENERAL ALLEGATIONS

10.     Plaintiff is informed and believes, and thereon alleges, that Defendants, including DOES 1 through 50, inclusive, were the agents, servants, employees, successors in interest, and/or joint venturers of their co-defendants, and were acting within the course, scope, and authority of such relationships. Plaintiff further alleges that each Defendant, when acting as a principal, was negligent in the hiring, selection, and supervision of each and every other Defendant acting as its agent, servant, employee, successor in interest, and/or joint venturer.

11.     Plaintiff is informed and believes, and based thereon alleges, that at all times relevant to this action, Defendants KIDO, WESTERN LLC, WESTERN INC., AMAZON and/or DOES 1 through 50, inclusive, were and are engaged in the business of manufacturing, fabricating, installing, operating, designing, testing, processing, delivering, assembling, distributing, advertising, marketing, buying, selling, leasing, purchasing, inspecting, servicing, repairing, warranting, modifying, utilizing, and maintaining a certain SUBJECT HELMET, including each and every component part thereof, on or before July 30, 2023.

## STATEMENT OF FACTS

12.     This is a personal injury action arising from an incident which occurred on July 30, 2023.

13.     Upon information and belief, and thereon alleged, at all times relevant herein, Defendants KIDO, WESTERN LLC, WESTERN INC., AMAZON and/or DOES 1 through 50, inclusive, owned, manufactured, distributed, marketed, and/or otherwise placed into the stream of commerce motorcycle helmets, including but not limited to the SUBJECT HELMET worn by Plaintiff at the time of the incident. Defendant conducted business through retail and distribution channels within the State of California, including via authorized resellers and online platforms such as amazon.com (hereinafter the "ONLINE STORE" or the "SUBJECT STORE").

14.     Defendant KIDO in particular and/or DOES 1 through 50, inclusive, hold themselves out as being known for "taking safety very seriously" and state that their vision is that "no one should be seriously injured or killed during motorcycle trips".

15.     Upon information and belief, and thereon alleged, at all times relevant herein, Defendants

- 4 -

1  and/or DOES 1 through 50, inclusive, assembled, manufactured, distributed, marketed, and sold the
2  SUBJECT HELMET through the ONLINE STORE.

3      16.    On or around March 10, 2020, Plaintiff purchased the SUBJECT HELMET through the
4  SUBJECT STORE from Defendants, and/or DOES 1 through 50, inclusive.

5      17.    On or around March 13, 2020, Defendants, and/or DOES 1 through 50, inclusive, delivered
6  the SUBJECT HELMET to Plaintiff's family's home located in Mason, Ohio.

7      18.    Upon information and belief, and thereon alleged, at the time of sale and delivery, the
8  SUBJECT HELMET was defective, unsafe, and unreasonably dangerous for its intended use. Specifically,
9  the chinstrap assembly and riveted attachment point were not properly designed, constructed, or reinforced,
10  such that under foreseeable crash conditions, the chinstrap would tear through its plastic anchor, allowing
11  the helmet to detach from the wearer's head. As a result, the SUBJECT HELMET failed to perform as a
12  protective safety device, rendering it unfit for its ordinary purpose and unsafe for use in a reasonably
13  foreseeable motorcycle collision.

14      19.    At the time of delivery, the SUBJECT HELMET was fully manufactured, assembled, and
15  distributed by Defendants and/or DOES 1 through 50. Plaintiff is informed and believes, and thereon alleges,
16  that the helmet was marketed and sold as a ready-to-use safety device for motorcycle riders, and was not
17  subject to post-sale modification or adjustment by end users beyond standard sizing adjustments. At all
18  relevant times, Plaintiff BRYAN used the SUBJECT HELMET in the manner intended and expected by the
19  manufacturer

20      20.    On or about July 30, 2023, Plaintiff BRYAN was lawfully operating his 2005 Honda RC51
21  motorcycle westbound on Western Row Road, in the City of Mason, Warren County, Ohio.

22      21.    At the same time and location, non-party Ava Deluca, operating a 2018 Honda CRV, was
23  traveling northbound on Freedom Way and attempted to cross the intersection at Western Row Road toward
24  Village Lakes Boulevard.

25      22.    As Ms. Deluca crossed the intersection Plaintiff's motorcycle collided with the passenger
26  side of the CRV, resulting in Plaintiff being violently ejected from his motorcycle.

27      23.    At the time of the collision, Plaintiff was wearing the SUBJECT HELMET, manufactured,
28  designed, assembled, marketed, distributed, sold by Defendants and/or DOES 1 through 50, inclusive.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

24. Upon impact, the chinstrap of the helmet failed catastrophically. Specifically, the plastic housing that secured the rivet anchoring the chinstrap failed and tore apart, causing the helmet to come off Plaintiff BRYAN's head.

25. Medical records and investigative reports confirm that the helmet separated from Plaintiff BRYAN's head during the crash sequence, exposing his bare head to direct impact with the pavement.

26. As a result of the defective condition of the helmet, Plaintiff suffered catastrophic head trauma, including but not limited to severe traumatic brain injury requiring multiple cranial surgeries, prolonged hospitalization, and permanent cognitive impairment.

27. Plaintiffs allege that the helmet was defectively designed and manufactured, and that it failed to protect him in the manner reasonably expected of similar helmets used for motorcycling purposes.

28. Plaintiffs further allege that Defendants and/or DOES 1 through 50, inclusive, failed to warn of known or knowable dangers associated with the use and performance limitations of the helmet, and breached implied and express warranties relating to its safety and crashworthiness.

29. Plaintiff BRYAN's injuries were caused in substantial part by the defective condition of the helmet and the failure of the manufacturer to adequately design, test, warn, or provide a safe and reliable safety product.

## FIRST CAUSE OF ACTION

### [STRICT PRODUCT LIABILITY: DEFECTIVE DESIGN AND/OR MANUFACTURE]

### (Against All Defendants and/or DOES 1 through 50)

30. Plaintiff BRYAN, and by reference Plaintiff SARAH for loss of consortium, hereby incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

31. At all relevant times, Defendants and DOES 1 through 50 (collectively "Defendants") were engaged in the business of designing, manufacturing, assembling, testing, marketing, distributing, and selling motorcycle helmets, including the SUBJECT HELMET involved in this incident.

32. Defendants designed, manufactured, assembled, tested, marketed, distributed, and sold the SUBJECT HELMET to consumers, including Plaintiff, with the expectation that the helmet would be used

- 6 -

in the manner intended by Defendants, and that it would provide adequate protection in the event of a motorcycle collision.

33.     The SUBJECT HELMET reached Plaintiff without substantial change in its condition from the time it was manufactured and distributed by Defendants.

34.     At the time the SUBJECT HELMET left the possession of Defendants, it contained defects in manufacturing and/or design which made it unreasonably dangerous and unsafe for its intended use. These defects include, but are not limited to, the failure of the chin strap attachment mechanism, including a rivet that tore through the plastic shell during the crash, causing the helmet to separate from Plaintiff's head upon impact.

35.     The SUBJECT HELMET also lacked adequate warnings and instructions regarding the risk of chin strap failure and/or proper inspection of fastening components that could come loose or fail under impact conditions foreseeable in motorcycle crashes.

36.     On or about July 30, 2023, Plaintiff was lawfully operating his 2005 Honda RC51 motorcycle in Mason, Ohio, when he was struck by a 2018 Honda CRV driven by a third party. Plaintiff was wearing the SUBJECT HELMET at the time of the crash. Due to the defective design and/or manufacturing of the SUBJECT HELMET, the helmet detached from Plaintiff's head after the initial impact, resulting in Plaintiff's unprotected head striking the pavement.

37.     As a direct and proximate result of the failure of the SUBJECT HELMET, Plaintiff suffered catastrophic and permanent injuries, including but not limited to traumatic brain injury, requiring multiple brain surgeries, hospitalization, long-term medical care, pain, suffering, and loss of quality of life.

38.     The unreasonably dangerous and defective condition of the SUBJECT HELMET was a substantial factor in causing Plaintiff's injuries.

39.     Plaintiff is therefore entitled to recover damages for personal injuries in an amount according to proof at the time of trial, including but not limited to general damages, medical expenses, loss of earnings, and other economic and non-economic damages.

//

//

//

## SECOND CAUSE OF ACTION

### [STRICT PRODUCT LIABILITY: FAILURE TO WARN]

### (Against All Defendants and/or DOES 1 through 50)

40.     Plaintiff BRYAN, and by reference Plaintiff SARAH for loss of consortium, re-alleges and incorporates herein by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

41.     At all times mentioned herein, Defendants and/or DOES 1 through 50, inclusive, advertised, marketed, manufactured, constructed, fabricated, assembled, designed, warranted, inspected, maintained, distributed, and/or sold the SUBJECT HELMET, placing it into the stream of commerce for foreseeable use by consumers, including Plaintiff BRYAN.

42.     The SUBJECT HELMET was defective in that it lacked adequate and proper warnings or instructions regarding the risks of helmet failure in foreseeable crash conditions, including but not limited to the risk that the chinstrap mechanism might detach or fail under impact, causing the helmet to come off and leave the rider unprotected.

43.     Defendants and/or DOES 1 through 50, inclusive, knew or should have known that the SUBJECT HELMET posed a substantial risk of detachment under foreseeable accident forces and failed to warn or instruct users, including Plaintiff, of these dangers. The warnings and instructions provided with the SUBJECT HELMET were vague, incomplete, misleading, and failed to convey the severity or nature of the risks associated with its use.

44.     Despite actual or constructive knowledge of the defective nature of the SUBJECT HELMET and the risks of catastrophic failure during motorcycle accidents, Defendants and/or DOES 1 through 50, inclusive, continued to market, sell, and distribute the helmet without adequate warnings.

45.     On or about July 30, 2023, Plaintiff BRYAN was wearing the SUBJECT HELMET while lawfully riding his motorcycle when he was struck by a motor vehicle. During the collision, the helmet's chinstrap attachment failed, causing the helmet to detach from Plaintiff BRYAN's head. Plaintiff BRYAN's unprotected head then struck the pavement, resulting in severe traumatic brain injuries and the need for multiple surgeries.

46.     The failure of Defendants and/or DOES 1 through 50, inclusive, to warn of the risks

- 8 -

associated with the SUBJECT HELMET was a substantial factor in causing Plaintiff BRYAN's injuries.

47. As a direct and legal result of the above conduct, Plaintiff BRYAN suffered severe bodily injury, emotional distress, loss of earnings and earning capacity, past and future medical expenses, and other general and special damages according to proof at trial.

48. Plaintiff BRYAN is therefore entitled to recover all damages permitted under California law, including but not limited to compensatory damages for physical injuries, emotional harm, and economic loss.

### THIRD CAUSE OF ACTION

### [NEGLIGENT PRODUCT LIABILITY]

### (Against All Defendants and DOES 1 through 50)

49. Plaintiff BRYAN, and by reference Plaintiff SARAH for loss of consortium, re-alleges and incorporates herein by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

50. At all times mentioned herein, Defendants and DOES 1 through 50, inclusive, were engaged in the business of designing, manufacturing, assembling, testing, inspecting, marketing, labeling, distributing, and/or selling motorcycle helmets, including the SUBJECT HELMET, for use by the general public, including consumers such as Plaintiff.

51. Defendants and/or DOES 1 through 50, inclusive, had a duty to exercise reasonable care in the design, manufacture, testing, assembly, inspection, labeling, marketing, and distribution of the SUBJECT HELMET so that it would be safe when used as intended or in a reasonably foreseeable manner.

52. At all times herein mentioned, Defendants and/or DOES 1 through 50, inclusive, knew or in the exercise of ordinary and reasonable care should have known that the SUBJECT HELMET, if not properly designed, manufactured, tested, or assembled, posed a substantial risk of serious injury or death, particularly in the event of a foreseeable motorcycle collision.

53. Defendants and/or DOES 1 through 50, inclusive, breached their duty of care and were negligent in the design, manufacture, assembly, testing, labeling, inspection, and marketing of the SUBJECT HELMET. Said negligence includes but is not limited to the following:

a. Failing to properly secure and reinforce the chinstrap attachment points on the helmet;

- 9 -

b.   Using inadequate or substandard materials to anchor the rivets or connection hardware;

c.   Failing to test the chinstrap retention system under foreseeable crash conditions;

d.   Failing to adequately inspect the helmet prior to placing it into the stream of commerce; and

e.   Failing to warn consumers of the risk that the helmet could detach after a collision.

54.   On or about July 30, 2023, while Plaintiff BRYAN was operating his motorcycle in the left through lane westbound on Western Row Road in Mason, Ohio, he was struck by a 2018 Honda CRV driven by a third party. The impact caused Plaintiff BRYAN to be thrown from his motorcycle. During the incident, the SUBJECT HELMET's chinstrap attachment system failed and the helmet detached from Plaintiff BRYAN's head. As a result, Plaintiff BRYAN's unprotected head struck the pavement, causing him to suffer severe traumatic brain injuries and other catastrophic harm.

55.   The SUBJECT HELMET failed to perform as safely as an ordinary consumer would expect when used in a foreseeable manner, and its failure was the result of Defendants' and/or DOES 1 through 50, inclusive, negligence in the design, manufacture, and inspection of the product.

56.   As a direct and legal result of Defendants' and/or DOES 1 through 50, inclusive, negligence, Plaintiff sustained serious and permanent physical injuries, emotional distress, economic losses, loss of earning capacity, and incurred past and future medical expenses, all in an amount to be determined at trial.

57.   Plaintiff is therefore entitled to recover all available damages under California law, including compensatory damages for bodily injury, pain and suffering, loss of enjoyment of life, lost income, medical costs, and any other relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### [BREACH OF EXPRESS WARRANTIES]

### (Against All Defendants and DOES 1 through 50)

56.   Plaintiff BRYAN re-alleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

57.   At all times mentioned herein, Defendants and DOES 1 through 50, inclusive, designed, manufactured, assembled, distributed, marketed, and sold the SUBJECT HELMET to the general public, including Plaintiff BRYAN.

- 10 -

58. In connection with the sale, distribution, and promotion of the SUBJECT HELMET, Defendants and/or DOES 1 through 50, inclusive, made specific and affirmative representations, promises, and express warranties regarding the safety, durability, performance, and crashworthiness of the helmet. These express warranties included, but were not limited to, claims made in packaging, advertising, instruction manuals, promotional materials, and product labeling, such as that the helmet would remain securely fastened during impact and provide protection against head trauma during foreseeable motorcycle accidents.

59. Plaintiff BRYAN, as an intended and foreseeable user of the SUBJECT HELMET, reasonably relied upon the truth of these express representations in deciding to use the helmet during motorcycle operation.

60. The SUBJECT HELMET did not conform to the express warranties made by Defendants and/or DOES 1 through 50, inclusive. Specifically, the helmet failed to perform as warranted when, during a foreseeable motorcycle collision, the chinstrap detached due to a design or manufacturing defect in the rivet/attachment point, causing the helmet to come off Plaintiff BRYAN's head at the moment of critical need. This failure rendered the helmet unsafe and unfit for its intended and warranted purpose of protecting the head during a crash.

61. As a direct and legal result of the breach of express warranties by Defendants and/or DOES 1 through 50, inclusive, Plaintiff BRYAN suffered severe and permanent injuries, including but not limited to traumatic brain injury, multiple surgeries, emotional and mental distress, physical impairment, loss of enjoyment of life, lost wages, and past and future medical expenses, in an amount to be proven at trial.

62. Defendants' breach of express warranties was a substantial factor in causing Plaintiff BRYAN's injuries and damages.

### FIFTH CAUSE OF ACTION

### [BREACH OF IMPLIED WARRANTIES]

### (Against All Defendants and DOES 1 through 50)

63. Plaintiffs BRYAN and SARAH re-alleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

64. At all times mentioned herein, Defendants and/or DOES 1 through 50, inclusive, were

- 11 -

engaged in the business of designing, manufacturing, assembling, testing, inspecting, distributing, marketing, and selling motorcycle helmets, including the SUBJECT HELMET, to members of the general public, including Plaintiff.

65. By virtue of the manufacture, distribution, and sale of the SUBJECT HELMET, Defendants and/or DOES 1 through 50, inclusive, impliedly warranted that the helmet was of merchantable quality and fit for the ordinary purpose for which such helmets are used, namely, to remain properly secured and protect the head during motorcycle collisions.

66. Plaintiff BRYAN purchased and used the SUBJECT HELMET relying on the implied warranties made by Defendants and/or DOES 1 through 50, inclusive, and used the helmet in a manner that was intended, foreseeable, and reasonable under the circumstances.

67. The SUBJECT HELMET was not of merchantable quality and was not fit for its intended purpose. Specifically, it contained defects in design and/or manufacture that rendered it prone to chinstrap failure and detachment during impact, such that it failed to remain on Plaintiff BRYAN's head and did not provide the protection that an ordinary consumer would expect from a motorcycle helmet.

68. As a direct and legal result of the breach of implied warranties by Defendants and/or DOES 1 through 50, inclusive, Plaintiff BRYAN sustained severe and permanent injuries, including but not limited to traumatic brain injury, multiple surgeries, physical and emotional suffering, disability, loss of enjoyment of life, and medical expenses, all in an amount to be proven at trial.

69. Defendants' and/or DOES 1 through 50, inclusive, breach of implied warranties was a substantial factor in causing Plaintiff BRYAN's injuries and resulting damages.

## SIXTH CAUSE OF ACTION

### [NEGLIGENCE]

### (Against All Defendants and DOES 1 through 50)

70. Plaintiffs re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

71. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants and/or DOES 1 through 50, inclusive, including said Defendants' employees, agents, and independent contractors, owed a duty of care to all reasonably foreseeable people, including Plaintiff

- 12 -

BRYAN, to advertise, market, manufacture, fabricate, assemble, construct, design, warrant, maintain, control, deliver, sell, service, inspect, modify, and/or repair the SUBJECT HELMET, in a reasonable manner.

72. Plaintiffs are further informed and believe, and thereon allege, that Defendants and/or DOES 1 through 50, inclusive, were agents, servants, employees, successors in interest, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer.

73. Plaintiffs are further informed and believe, and thereon allege, that at all times mentioned herein, that Defendants and/or DOES 1 through 50, inclusive, including said Defendants' employees, agents, and independent contractors, carelessly, negligently and recklessly advertised, marketed, manufactured, fabricated, assembled, constructed, designed, warranted, maintained, controlled, delivered, sold, serviced, inspected, modified, and/or repaired the SUBJECT HELMET, including but not limited to doing the following:

      a.  Failing to manufacture, fabricate, assemble, construct, and/or otherwise design the SUBJECT HELMET correctly, thereby creating an unsafe condition for persons who would be reasonably expected to use the SUBJECT HELMET, including Plaintiff BRYAN;

      b.  Negligently and carelessly advertising, marketing, selling, and/or delivering the SUBJECT HELMET to Plaintiff BRYAN for use when it was, at all times relevant herein, in an unsafe condition that would have been reasonably discoverable to Defendants and/or DOES 1 through 50, inclusive;

      c.  Failing to provide Plaintiff BRYAN with any warnings about the unsafe condition of the SUBJECT HELMET at any time;

74. Defendants and/or DOES 1 through 50, inclusive, knew or should have reasonably known, or through the exercise of due care could have discovered that the SUBJECT HELMET was dangerous and in an unsafe condition, and could have eliminated, warned, or guarded against the hazard to ensure the

SUBJECT HELMET remained in safe condition for all persons, including Plaintiff.

75. Plaintiffs are further informed and believe, and thereon allege, that said careless, negligent, and reckless conduct in regards to advertising, marketing, manufacturing, fabricating, assembling, constructing, designing, warranting, maintaining, controlling, delivering, selling, servicing, inspecting, modifying, and/or repairing the SUBJECT HELMET and the failure to eliminate, warn, or guard against the hazard was the legal, direct, and proximate cause of the incident, Plaintiff BRYAN's resulting injuries and damages of Plaintiffs as herein alleged.

76. Plaintiffs are further informed and believe, and thereon allege, that at all times mentioned herein, All Defendants and/or DOES 1 through 50, inclusive, carelessly, negligently and recklessly advertised, marketed, manufactured, fabricated, assembled, constructed, designed, warranted, maintained, controlled, delivered, sold, serviced, inspected, modified, and/or repaired SUBJECT HELMET, so as to legally and proximately cause Plaintiff to fall and sustain serious injury to her person.

77. As a legal, direct, and proximate result of the above-mentioned conduct of Defendants and DOES 1 through 50, inclusive, Plaintiff BRYAN was injured and hurt in his health, strength, and activity, sustaining serious injuries to his body which have caused and continue to cause Plaintiff BRYAN great physical, emotional and mental pain and suffering. Plaintiffs are further informed and believe, and thereon allege, that said injuries will result in some permanent disability to him, all to his general damage in an amount which will be stated according to proof, at the time of trial.

78. As a legal, direct, and proximate result of the above-mentioned conduct of Defendants and DOES 1 through 50, inclusive, and each of them, Plaintiff BRYAN was compelled to and did employ the services of emergency room physicians, and the like, to care for and treat him, and did incur medical, professional, and incidental expenses, and Plaintiffs are informed and believe, and thereon alleges, that by reason of his injuries, will necessarily incur additional like expenses for an indefinite period of time in the future, the exact amount of which expenses will be stated according to proof, at the time of trial.

79. As a legal, direct, and proximate result of the above-mentioned conduct of Defendants and DOES 1 through 50, inclusive, and each of them, Plaintiff BRYAN was injured and hurt in his health, strength, and activity, sustaining serious injuries to his body which have caused and continue to cause Plaintiff BRYAN great physical, emotional and mental pain and suffering. Plaintiffs are further informed

- 14 -

and believe, and thereon alleges, that said injuries will result in some permanent disability to Plaintiff BRYAN, all to his general damage in an amount which will be stated according to proof, at the time of trial.

## SIXTH CAUSE OF ACTION

### [LOSS OF CONSORTIUM]

**(By Plaintiff SARAH DODS Against All Defendants and DOES 1 through 50)**

80.  Plaintiff SARAH DODS is now, and at all relevant times herein was, the lawful spouse of Plaintiff BRYAN G. DODS.

81.  Plaintiff SARAH re-alleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

82.  As described above, on or about July 30, 2023, Defendants and DOES 1 through 50, inclusive, negligently and defectively designed, manufactured, assembled, tested, inspected, marketed, and sold the SUBJECT HELMET, which failed during a collision involving Plaintiff BRYAN.

83.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff BRYAN sustained catastrophic and permanent injuries, including a traumatic brain injury, and has suffered a loss of health, strength, and capacity to carry on his usual activities.

84.  As a result of the injuries sustained by her spouse, Plaintiff SARAH has suffered and continues to suffer a loss of consortium, including the loss of love, companionship, comfort, affection, society, solace, moral support, assistance, sexual relations, and the ability to engage in household services with her husband, BRYAN.

85.  The above-mentioned losses were the direct and proximate result of the negligent, careless, and otherwise wrongful conduct of Defendants.

86.  As a result, Plaintiff SARAH has sustained damages in an amount according to proof at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

A.  General damages in an amount subject to proof;

B.  Special damages according to proof;

C.  Costs of suit herein; and

- 15 -

D.   For such other and further relief as the court deems proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs BRYAN G. DODS and SARAH DODS, hereby demand a trial by jury as to all causes of action.

DATED: July 25, 2025                         KRAMER TRIAL LAWYERS A.P.C.

By: _____
DANIEL K. KRAMER
TERESA A. JOHNSON
WILLIAM N. MATTHEWS

Attorneys for Plaintiffs,
BRYAN G. DODS and SARAH DODS